**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-44-JBC**

**RICHARD KNITTEL, ET AL.,**                                           **PLAINTIFFS,**

**V.**                              **MEMORANDUM OPINION AND ORDER**

**FIRST FINANCIAL MORTGAGE CORP., ET AL.,**                    **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motion for summary judgment (R. 24) and

motion in limine (R. 25) of defendant Citimortgage, Inc.  The court will grant the

motion for summary judgment and deny as moot the motion in limine.

**I.      Background**

In spring 2004, the plaintiffs, Richard and Deborah Knittel, sought to refinance

the loans on their personal residence and seven rental properties in order to take

advantage of lower interest rates.  The plaintiffs obtained new loans from defendant

First Financial Mortgage Corporation and executed numerous documents at the closing

of those transactions, which was held on May 6, 2004.  In particular, the plaintiffs

signed documents entitled "Notice of Right of Rescission," "Truth-In-Lending

Disclosure Statement," and "Itemization of the Amount Financed."  Carmella Dueling,

the closing agent and an employee of First Financial, did not have copies of the loan

documents ready for the plaintiffs to take home with them that day.  Instead, she told

the plaintiffs that the documents would be mailed to them later.  The plaintiffs

received a large envelope in their mailbox on May 12, 2004, that contained their copies of the loan documents.  While First Financial was the original lender, it later assigned the mortgage concerning the Knittel's personal residence to ABN AMRO Mortgage Group, Inc., which subsequently assigned the mortgage to defendant Citimortgage, Inc.

In 2005 or 2006, Mr. Knittel provided the loan documents relating to the loan for his personal residence to his friend, Jim Collins, who agreed to review the documents to see if any laws had been violated.  After the initial review, Collins reported that he thought that some laws were violated and suggested that Mr. Knittel pay him $375.00 for a complete audit of the loan.  Mr. Knittel paid the fee, and Collins and T.J. Henderson, a purported expert on consumer-protection laws, prepared a report detailing alleged violations of various laws.  Collins then recommended that Mr. Knittel send a letter to ABN AMRO and rescind the loan.  The plaintiffs sent such a letter to First Financial and ABN AMRO on April 28, 2007.  First Financial subsequently refuted the allegations raised in the plaintiffs' letter, and ABN AMRO denied the request for rescission.

Following the denial of their request to rescind the loan, the plaintiffs commenced the instant action.  After the conclusion of discovery, Citimortgage moved for summary judgment and moved in limine to exclude T.J. Henderson from testifying at trial.

**II.    Legal Analysis**

Citimortgage is entitled to summary judgment on all counts.  The plaintiffs'
primary cause of action against Citimortgage is for the rescission of the loan involving
their personal residence, which was executed on May 6, 2004.  The plaintiffs,
however, cannot proceed with this claim because they did not timely submit a notice
of rescission.  Under the Truth-In-Lending Act ("TILA"),

> in the case of any consumer credit transaction . . . in which
> a security interest . . . is or will be retained or acquired in
> any property which is used as the principal dwelling of the
> person to whom credit is extended, the obligor shall have
> the right to rescind the transaction until midnight of the
> third business day following the consummation of the
> transaction or the delivery of the information and rescission
> forms required under this section together with a statement
> containing the material disclosures required under this
> subchapter, whichever is later, by notifying the creditor, in
> accordance with regulations of the Board, of his intention to
> do so.

15 U.S.C. § 1635(a).  In addition, creditors must disclose the right to rescind the
transaction to the obligors and provide appropriate forms for the obligors to exercise
that right. *Id.*

While the plaintiffs signed a "Notice of Right of Rescission" on May 6, 2004,
R. 24-3, a written acknowledgment of receipt typically "does no more than create a
rebuttable presumption of delivery" of the required notice, 15 U.S.C. § 1635(c).
Regardless of whether the plaintiffs' testimony that they were not given copies of the
notice and other accompanying documents on May 6, 2004, is sufficient to overcome
the statutory presumption, the claim for rescission fails as a matter of law because

3

First Financial delivered the loan materials, including the notice, to them on May 12, 2004.  Both plaintiffs testified that they received the loan documents, which include the "Notice of Right of Rescission," approximately one week after the closing.  R. 26, at 12-14; R. 27, at 5.  Because the plaintiffs received notice of their right to rescind the loan, the time in which they may exercise that right is limited to three days following the receipt of the notice.  15 U.S.C. § 1635(a).  Unlike obligors who never receive a notice of their right to rescind, the plaintiffs cannot extend their right to rescind to three years following the consummation of the transaction.  *See* 15 U.S.C. § 1635(f).

Citimortgage also is entitled to summary judgment on the plaintiffs' claim that ABN AMRO, which was acquired by Citimortgage, did not properly respond to their notice of rescission.  TILA provides,

> [w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).  However, "[n]either the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract."  *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 54 (1st Cir. 2002).  In order for the rescission to take effect, either it must be acknowledged by the creditor or an appropriate decisionmaker must determine that it

4

is proper.  *Id.* at 55.  In a letter dated May 11, 2007, ABN AMRO disputed the plaintiffs' request for a rescission.  Thus, ABN AMRO had no duty to respond further to the rescission letter until its propriety was adjudicated.

The plaintiffs clarify that they "are not pursuing Citimortgage for statutory or actual damages under [TILA], other than for its failure to respond to [their] rescission letter."  R. 30, at 4.  According to this statement, the plaintiffs are essentially abandoning their TILA claims against Citimortgage that do not involve rescission.  The court, therefore, will grant summary judgment to Citimortgage.  Moreover, the plaintiffs could not have prevailed on those claims because they admit that Citimortgage is not a creditor, which is "a party to whom the obligation was initially payable."  *Id.*  Under 15 U.S.C. § 1641(b), when an action is brought by or against a subsequent assignee of the original creditor, a written acknowledgment of receipt of the mandatory TILA disclosures provides conclusive proof of the delivery of those documents.  The assignee can be held liable only if it had "knowledge to the contrary." *Id.*  The plaintiffs presented no evidence or argument suggesting that Citimortgage had knowledge that the disclosures were not delivered.  Since the plaintiffs have admitted that Citimortgage is not a creditor and provided no proof that it had knowledge that the disclosures were not delivered, their TILA claims fail as a matter of law.

While the plaintiffs expressly acknowledged that they are no longer pursuing the TILA claims against Citimortgage, they did not indicate whether they are continuing to pursue the claims regarding the Kentucky Consumer Protection Act, breach of

5

contract, and unjust enrichment.  In fact, the plaintiffs did not present any argument or evidence in support of those claims in their response to Citimortgage's motion for summary judgment.  By failing to respond specifically to Citimortgage's arguments on those claims, the plaintiffs have abandoned them, and the court will grant summary judgment to Citimortgage.  *See National Information and Communications Equipment Network, Inc. v. Willigan*, No. 06-28-DLB, 2007 WL 2979928, at *10 (E.D.Ky. Oct. 11, 2007) (citing *Larimore v. Grant*, No. 3:03-CV-664-S, 2006 WL 2037390, n.3 (W.D.Ky. July 17, 2006)); *see also Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 669 (S.D. Ohio 2005); *Kattar v. Three Rivers Area Hospital Authority*, 52 F.Supp.2d 789, 798, n.7 (W.D. Mich. 1999).

Even if the court had not found that the plaintiffs have abandoned their claims against Citimortgage under the Kentucky Consumer Protection Act, breach of contract, and unjust enrichment, the court still would grant summary judgment to Citimortgage. Generally, "[w]hen reviewing a summary judgment motion, the [c]ourt must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence." *Johnson v. Kindred Nursing Centers East, LLC*, No. 2:05-CV-00173, 2007 WL 1192357, at *2 (S.D. Ohio Apr. 23, 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)). However, the nonmoving party cannot rest on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court has no duty to "speculate on which portion of the record the nonmoving party relies, nor is it

obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 110 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).  Summary judgment is proper if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial.

The plaintiffs allege that the defendants violated the Kentucky Consumer Protection Act, K.R.S. § 367.010 *et seq.*   The Act prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KRS § 367.170.  The plaintiffs contend that the defendants "[m]isle[d] Plaintiffs on costs of services actually rendered by Defendants for obtaining credit on Plaintiffs' behalf" and "[f]ail[ed] to disclose the yield spread premium, which misle[d] Plaintiffs to believing that they were receiving a lower interest rate than they actually were." R. 1, at 8.  They also allege that the defendants violated the Act "through their failure to provide Plaintiffs with an accurate letter of commitment which contained a full and detailed description of the services undertaken to perform and information regarding the accurate payments of those services to Defendants." *Id.*  The plaintiffs, however, acknowledged that Citimortgage was not a party to the original loan transaction.  R. 30, at 4.  Thus, Citimortgage had no duty to make disclosures concerning the loan or to provide a letter of commitment.  Because the plaintiffs have failed to present any evidence to suggest that Citimortgage engaged in any "[u]nfair, false, misleading, or

deceptive acts or practices" toward them, their consumer-protection claim cannot survive.

Similarly, the breach-of-contract claim must be dismissed as well.  The plaintiffs allege that the defendants breached the contract by failing to deal with them in good faith and by failing to disclose material information, such as the imposition of a yield spread premium and a higher interest rate than contractually agreed.  R. 1, at 9.  Again, the plaintiffs have failed to show that Citimortgage had a duty to make the disclosures or that it is liable for the actions or omissions of another party.  In addition, there is nothing in the record that indicates that Citimortgage acted in bad faith.

The plaintiffs cannot proceed on their claim for unjust enrichment and implied contract against Citimortgage.  "The doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed."  *Codell Construction Co. v. Commonwealth of Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) (citing *Ashton Contractors & Engineers, Inc. v. State of Arizona*, 454 P.2d 1004 (Ariz. 1969)).  First Financial and the plaintiffs entered into a written contract so that the plaintiffs could refinance the mortgage on their home.  Subsequently, First Financial assigned its interest to ABN AMRO, which was acquired by Citimortgage. The plaintiffs cannot recover under the doctrine of unjust enrichment since the contract between the parties covers the same subject matter as to which the plaintiffs seek to impose an implied contract. *Fruit Growers Express Co. v. Citizens Ice and Fuel Co.*, 112 S.W.2d 54, 56 (Ky. 1937) ("there can be no implied contract or presumed

agreement where there is an express one between the parties in reference to the same subject matter").

Lastly, because all claims against Citimortgage have been dismissed, its motion in limine is rendered moot.

**III.    Conclusion**

Accordingly,

**IT IS ORDERED** that the motion for summary judgment of Citimortgage, Inc. (R. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion in limine of Citimortgage, Inc. (R. 25) is **DENIED AS MOOT**.

Signed on  June 16, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY